# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| EXCO RESOURCES, INC., *et al.*,[1] | § | Case No. 18-30155 (MI) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | (Emergency Hearing Requested) |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER ESTABLISHING A RECORD DATE FOR NOTICE AND SELL-DOWN PROCEDURES FOR TRADING IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES

> THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.
>
> EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE HELD ON THIS MATTER FOR JANUARY 18, 2018, AT 2:30 P.M. (CT) BEFORE THE HONORABLE MARVIN ISGUR, 515 RUSK STREET, COURTROOM 404, HOUSTON, TEXAS 77002.
>
> REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  EXCO Resources, Inc. (2779); EXCO GP Partners Old, LP (1262); EXCO Holding (PA), Inc. (1745); EXCO Holding MLP, Inc. (1972); EXCO Land Company, LLC (9981); EXCO Midcontinent MLP, LLC (0557); EXCO Operating Company, LP (1261); EXCO Partners GP, LLC (1258); EXCO Partners OLP GP, LLC (1252); EXCO Production Company (PA), LLC (7701); EXCO Production Company (WV), LLC (7851); EXCO Resources (XA), LLC (7775); EXCO Services, Inc. (2747); Raider Marketing GP, LLC (6366); and Raider Marketing, LP (4295).  The location of the Debtors' service address is:  12377 Merit Drive, Suite 1700, Dallas, Texas 75251.

KE 49703731

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state the following in support of this motion:

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Record Date Order"):  (a) establishing the date the Court enters the Record Date Order as the effective date (the "Record Date") for notice and sell-down procedures for trading in certain claims against the Debtors' estates in order to preserve the Debtors' ability to formulate a plan of reorganization that maximizes the use of their Tax Attributes (as defined below); and (b) granting related relief.[3]

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter

---

[2]   A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Tyler Farquharson, Chief Financial Officer and Treasurer of EXCO Resources, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on January 15, 2018 (the "Petition Date").

[3]   Contemporaneously with this motion, the Debtors filed the *Debtors' Emergency Motion for Entry of Interim and Final Orders Approving Notification and Hearing Procedures for Certain Transfers of and Declarations of Worthlessness with Respect to Common Stock and Granting Related Relief* seeking to establish notification and hearing procedures regarding the transfers of and declarations of worthlessness with respect to the Debtors' equity securities to preserve the use of their Tax Attributes.

final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 362 and 541 of title 11 of the Bankruptcy Code.

### The Tax Attributes

5.      The Debtors have and anticipate that they will continue to incur significant net operating losses ("NOLs") and general business credit carryforwards (the "Business Credits," and together with NOLs and certain other tax attributes, the "Tax Attributes").[4]  The Debtors may utilize the Tax Attributes to offset their future taxable income, thereby reducing their future aggregate tax obligations.  Vitally, such Tax Attributes may also be utilized by the Debtors to offset any taxable income generated by transactions consummated during these chapter 11 cases. The Debtors' ability to use their Tax Attributes may, however, be lost (or extremely limited) if they experience an "ownership change" for tax purposes and are unable to take advantage of certain favorable rules that apply to ownership changes that occur pursuant to a bankruptcy plan of reorganization (as described more fully below).  Thus, to protect their ability to use the Tax Attributes (and, specifically, to rely on the favorable rule described below), the Debtors may ultimately need to seek an order (a "Sell-Down Order") requiring any persons or entities that have acquired debt claims against the Debtors during these chapter 11 cases in such an amount that the holders of such claims would be entitled to receive more than 4.5 percent of the equity of the

---

[4]    The Tax Attributes include certain alternative minimum tax credits.  We do not discuss those credits further because of the changes to the treatment of such credits in the recently-enacted U.S. federal income tax legislation.

reorganized Debtors (collectively, the "Substantial Claimholders"), to sell-down their claims below this threshold amount.

6.      At this stage, it is too early to determine whether it is (or will be) necessary for the Debtors to obtain a Sell-Down Order.  Accordingly, this motion does not seek entry of a Sell-Down Order.  Instead, this motion merely seeks to establish the Record Date through entry of the proposed Record Date Order.  The Record Date Order will provide notice of the Record Date to entities that trade claims against the Debtors that their claims ultimately may be subject to sell-down.  This notice will communicate:  (a) that, subject to further Court order, such creditor's claims may ultimately be subject to sell-down; and (b) the date after which purchased claims could be subject to sell-down (*i.e.*, on or after the Record Date).  Thus, the ***only*** purpose of the Record Date Order is to set and provide notice of the Record Date, which will serve as a placeholder should the Debtors later determine that a Sell-Down Order is necessary to preserve the Tax Attributes.  And, if the Debtors later determine that a Sell-Down Order is necessary, the Debtors will file a separate motion requesting entry of a Sell-Down Order applicable to all claims traded ***after*** the Record Date.

**I.      The Significance of the Debtors' Valuable Tax Attributes.**

7.      As of December 31, 2016, the Debtors estimate that they have NOLs in the amount of approximately $2.3 billion and Business Credits in the amount of approximately $280,000.  The Tax Attributes are potentially of significant value to the Debtors and their estates because the Debtors can carry forward certain Tax Attributes to offset their future taxable income in future years.  In addition, such Tax Attributes may be utilized by the Debtors to offset any taxable income generated by transactions consummated during these chapter 11 cases.  Failure to preserve such assets could cause the Debtors' estates to suffer a significant tax liability to the detriment of stakeholder interests.

## II.      Limitations on Use of the Tax Attributes.

8.      Sections 382 and 383 of the Internal Revenue Code of 1986, as amended (the "IRC") limit the amount of taxable income that can be offset by a corporation's tax attributes in taxable years (or portions thereof) following an "ownership change." Generally, an "ownership change" occurs if the percentage (by value) of the stock of a corporation owned by one or more shareholders holding 5 percent of the stock has increased by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during the three-year testing period ending on the date of the ownership change. *See* 26 U.S.C. § 382.

9.      Although sections 382 and 383 of the IRC impose annual limitations on a taxpayer's use of its Tax Attributes, a special provision of section 382 also provides significant relief to a debtor if an ownership change occurs in the context of a confirmed chapter 11 plan and certain requirements are satisfied. Under section 382(*l*)(5) of the IRC, a debtor corporation is not subject to the general limitation imposed by sections 382 and 383 with respect to an ownership change if, as a result of the transactions contemplated by a bankruptcy plan, historic stockholders and/or the corporation's "qualified creditors" own at least 50 percent of the total value and voting power of the reorganized debtor's stock (the "Section 382(*l*)(5) Exception"). *See* 26 U.S.C. § 382(*l*)(5)(A).[5]

10.      In order to qualify for the Section 382(*l*)(5) Exception, "qualified creditors" (together with historic stockholders) must hold at least 50 percent of their stock immediately after emergence to preserve the majority of the Tax Attributes. A key aspect of the "qualified creditor"

---

[5]   A "qualified creditor" is generally one who (a) has held its claim continuously since at least 18 months prior to the petition date or (b) has held a claim incurred in the ordinary course of the debtor's business since the claim was incurred. *See* 26 U.S.C. § 382(*l*)(5)(E); Treas. Reg. § 1.382-9(d). For these purposes Treas. Reg. § 1.382-9(d)(3) permits taxpayers to treat any claim holder as *always* having held such claim if such claim holder owns less than 5 percent of the corporation's stock immediately following the ownership change.

analysis is the length of time that creditors have held their claims, together with a favorable presumption regarding that holding period that applies to creditors who receive less than 5 percent of the stock of a reorganized company.  The Record Date Order is designed to ensure that the Debtors preserve their ability to request Sell-Down Procedures if doing so is necessary and sufficient to satisfy this "qualified creditor" rule to preserve the Tax Attributes.

11.     If an ownership change occurred in the context of a confirmed chapter 11 plan and the Debtors were unable to take advantage of the Section 382($l$)(5) Exception, sections 382 and 383 and of the IRC would potentially significantly limit the amount of taxable income that the Debtors could offset by their "pre-change losses" and "excess credits" in taxable years (or a portion thereof).  *See* 26 U.S.C. § 382(b).  The Debtors' "pre-change losses" and "excess credits" would include the NOLs and the Business Credits.

## Notice and Summary of Potential Sell-Down Procedures

12.     The Debtors anticipate that they may need to seek entry of a Sell-Down Order that will enable them to (a) determine whether the Debtors will qualify for the Section 382($l$)(5) Exception and, if necessary, (b) require certain Substantial Claimholders to "sell-down" claims to the extent necessary to allow the Debtors to qualify for the Section 382($l$)(5) Exception (the "Sell-Down Procedures").

13.     Any potential Sell-Down Procedures would require a person or entity holding an amount of claims entitling that holder to receive more than 4.5 percent of the equity of the reorganized Debtors (the "Threshold Amount") to provide the Debtors with limited information such as the size of those holdings and the date those holdings were acquired.  The amount of claims held by a claimholder as of the Record Date would constitute the "Protected Amount." Claimholders would never be required to sell down their claims below the Threshold Amount or the Protected Amount, whichever is greater.  In other words, the Sell-Down Order (if sought by

the Debtors and entered by the Court) would apply only to entities that acquire claims in excess of the Threshold Amount *after* entry of the proposed Record Date Order and with full notice of the possibility that the claims they acquire could be subject to sell-down *if* the Debtors later determine that the Sell-Down Procedures are necessary.

14.     If the Sell-Down Procedures prove to be necessary, the Debtors would seek to require claimholders with claims greater than the Threshold Amount to provide updated holdings information shortly after the date on which the Court approves a disclosure statement for a plan of reorganization that endeavors to utilize the Section 382(*l*)(5) Exception.  Based on the updated holdings information, the Debtors would then determine whether it would be necessary to require claimholders holding claims in excess of the Threshold Amount and its Protected Amount to sell down a portion of their holdings to preserve the Tax Attributes.  The Debtors would only require a sell-down if it were deemed necessary for the Debtors to qualify for the Section 382(*l*)(5) Exception, and in no event would the Debtors seek to require a claimholder to sell-down claims below its Protected Amount.  In the event that the Debtors seek entry of a Sell-Down Order, the Debtors would seek to provide adequate notice and opportunity for claimholders to sell down their claims without triggering an unreasonable adverse impact on the value of such claims.

15.     The Debtors will provide notice, substantially in the form annexed as **Exhibit 1** to **Exhibit A** attached hereto, of the entry of the proposed Record Date Order to each of the Debtors' creditors (the "Record Date Order Notice"), and will supplement such notice if and when new creditors make themselves known to the Debtors by requesting service pursuant to Bankruptcy Rule 2002 or filing a proof of claim.  The Record Date Order Notice will be provided within five (5) business days of the Record Date Order.  Thus, entry of the proposed Record Date Order at the early stages of these chapter 11 cases will provide all claimants with advance notice prior to

any opportunity to trade in claims that any claims against the Debtors purchased after entry of the Record Date Order may ultimately be subject to the Sell-Down Procedures.  As a result, if a claimholder were required to sell down its holdings, the claimholder would have adequate notice and opportunity to effectuate the sell-down until shortly before the Debtors consummate a plan of reorganization.

### The Proposed Record Date Order Is Narrowly Tailored

16.     Approval of the proposed Record Date Order does not constitute approval of any Sell-Down Procedures, or even endorse the notion of Sell-Down Procedures.  Moreover, the Record Date Order will not impose a burden on any party since the Record Date Order alone— without a Sell-Down Order—will not affect the rights of any party.  As stated above, the Record Date Order merely establishes the Record Date as the effective date for any Sell-Down Procedures established in the future, and provides notice to claimholders and claims traders that if the Debtors eventually request and the Court ultimately approves the Sell-Down Procedures, the Threshold Amounts will be measured as of the Record Date and the claimholders may be subject to a required sell-down of any claims purchased after the Record Date.

17.     The relief requested herein is similar to relief granted in this and other jurisdictions. *See, e.g.*, *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. Jun. 16, 2017) (establishing a record date for notice and sell-down procedures); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. May 18, 2016) (same); *In re Autoseis, Inc.*, No. 14-20130 (RSS) (Bankr. S.D. Tex. Mar. 28, 2014) (same); *In re ATP Oil & Gas Corp.*, No. 12-36187 (MI) (Bankr. S.D. Tex. Sept. 27, 2012) (same); *In re Penn Va. Corp.*, No. 16-32395 (KLP) (Bankr. E.D.

Va. May 13, 2016) (same).[6]  For the avoidance of doubt, entry of the Record Date Order would in no way be deemed a determination of any kind that entry of a Sell-Down Order is necessary or warranted in these chapter 11 cases and the Court's review of any request for entry of a Sell-Down Order would stand on its own merits notwithstanding the Court's entry of the Record Date Order as requested herein.

## **Basis for Relief**

### I.       **The Tax Attributes are Property of the Debtor's Estate.**

18.       Section 541 of the Bankruptcy Code provides that property of the estate comprises, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541.  The Tax Attributes are property of the Debtors' estates.  *See, e.g.*, *Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines, Inc.)*, 928 F.2d 565, 573 (2d Cir. 1991) ("We hold that the right to a carryforward attributable to its . . . NOL was property of [the debtor's] bankruptcy estate."), *cert. denied*, 502 U.S. 821 (1991); *In re Delta Air Lines, Inc.*, No. 05-17923 (PCB) (Bankr. S.D.N.Y. Sept. 16, 2005) (finding that NOLs are property of the debtors' estates); *In re Forman Enters., Inc.*, 273 B.R. 408, 416 (Bankr. W.D. Pa. 2002) (same); *In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) (same).  Section 362(a)(3) of the Bankruptcy Code, moreover, stays "any act [of an entity] to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Because the Tax Attributes are property of the Debtors' estates, the Debtors have a duty to take steps to preserve them, and this Court has the authority under section 362 of the Bankruptcy Code to enforce the

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

automatic stay by taking steps to restrict the transfer of claims that could jeopardize the existence of these valuable assets.

## II.     The Requested Relief Is Necessary to Avoid Immediate and Irreparable Harm to the Debtors.

19.     Entry of the Record Date Order will not affect the rights of any party in interest; instead, it will set and preserve the Record Date should Sell-Down Procedures eventually become necessary to avoid the imposition of an irrevocable limitation on the Debtors' utilization of the Tax Attributes.  Whether or not the Debtors request—and the Court ultimately implements—the Sell-Down Procedures, entry of the Record Date Order protects the Debtors' option to choose to preserve the Tax Attributes without prejudicing any party in interest.  To preserve their ability to request and implement the Sell-Down Procedures, the Debtors seek to notify claims traders prospectively that claims acquired after the Record Date may be subject to sell-down.  Entry of the Record Date Order will preserve the Debtors' flexibility to seek to implement the Sell-Down Procedures if they determine that proposing a plan of reorganization that would take advantage of the Section 382($l$)(5) Exception is in the best interest of their estates.  Without the Record Date Order fixing the Record Date on or about the commencement of these chapter 11 cases, it is unlikely that the Debtors would ever be able to implement the Sell-Down Procedures and thereby avoid limitations on, and possibly the loss of, the Tax Attributes.

### Emergency Consideration

20.     Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the

viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this motion on an emergency basis.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

21.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

22.     Nothing contained herein is intended or shall be construed as:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claims; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## Notice

23.     The Debtors will provide notice of this motion to:  (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the holders of the 50 largest unsecured claims against the

Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' reserve-based revolving credit facility and counsel thereto; (d) the indenture trustee for the Debtors' 1.5 lien senior secured notes and counsel thereto; (e) the administrative agent and collateral trustee under the Debtors' 1.75 lien term loan facility and counsel thereto; (f) administrative agent under the Debtors' second lien term loan facility and counsel thereto; (g) the indenture trustee for the Debtors' 2018 senior notes; (h) the indenture trustee for the Debtors' 2022 senior notes; (i) counsel to the first lien agent; (j) counsels to certain 1.5 lien noteholders and 1.75 lien lenders; (k) counsel to the ad hoc noteholders committee; (l) counsel to a single large noteholder; (m) the United States Attorney's Office for the Southern District of Texas; (n) the Internal Revenue Service; (o) the United States Securities and Exchange Commission; (p) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; and (q) the state attorneys general for states in which the Debtors conduct business.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

24.     No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully Submitted,

*/s/ Marcus A. Helt*

Dated:  January 16, 2018

Marcus A. Helt (TX 24052187)
Telephone:     (214) 999-4526
Facsimile:     (214) 999-3526
Email:         mhelt@gardere.com
Michael K. Riordan (TX: 24070502)
Telephone:     (713) 276-5178
Facsimile:     (713) 276-6178
Email:         mriordan@gardere.com
**GARDERE WYNNE SEWELL LLP**
1000 Louisiana St., Suite 2000
Houston, Texas 77002

- and -

Patrick J. Nash, Jr., P.C. (*pro hac vice* admission pending)
Alexandra Schwarzman (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         patrick.nash@kirkland.com
               alexandra.schwarzman@kirkland.com

- and -

Christopher T. Greco (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         christopher.greco@kirkland.com

*Proposed Counsel for the Debtors and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on January 16, 2018, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Marcus A. Helt*
Marcus A. Helt
