**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 11** |
| | ) | |
| **EXCO RESOURCES, INC., et al.,**[1] | ) | **Case No. 18-30155 (MI)** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |

**LIMITED OBJECTION TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF**
**INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN**
**POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING**
**SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE**
**USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V)**
**MODIFYING THE AUTOMATIC STAY, (VI) SHEDULING A FINAL**
**HEARING, AND (VII) GRANTING RELATED RELIEF**

The Williams Companies, Inc., together with its wholly owned indirect subsidiaries,
Magnolia Midstream Gas Services, LLC, Louisiana Midstream Gas Services, LLC and
Mockingbird Midstream Gas Services, LLC (collectively, "Williams"), respectfully submits this
Limited Objection (the "Limited Objection") to the *Debtors' Emergency Motion for Entry of*
*Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing,*
*(II) Granting Liens and Providing Supermajority Administrative Expense Claims, (III) Authorizing*
*The Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay,*
*(VI) Scheduling A Final Hearing, and (VII) Granting Related Relief* filed herein on January 16,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, include: EXCO Resources, Inc. (2779); EXCO GP Partners Old, LP (1262); EXCO
Holding (PA), Inc. (1745); EXCO Holding MLP, Inc. (1972); EXCO Land Company, LLC (9981); EXCO
Midcontinent MLP, LLC (0557); EXCO Operating Company, LP (1261); EXCO Partners GP, LLC (1258);
EXCO Partners OLP GP, LLC (1252); EXCO Production Company (PA), LLC (7701); EXCO Production
Company (WV), LLC (7851); EXCO Resources (XA), LLC (7775); EXCO Services, Inc. (2747); Raider
Marketing GP, LLC (6366); and Raider Marketing, LP (4295) (each a "Debtor" and collectively the
"Debtors").

2018, at Docket No. 28 (the "DIP Motion").  In support of this Limited Objection, Williams

respectfully states as follows:[2]

**I.**
**RELEVANT BACKGROUND**

**A.      General Background**

      1.      On January 15, 2018 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their

businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  The Debtors' cases are being jointly administered.

**B.      Relationship between the Debtors and Williams**

      2.      Magnolia Midstream Gas Services, LLC ("Magnolia"), Louisiana Midstream Gas

Services, LLC ("Louisiana Midstream") and Mockingbird Midstream Gas Services, LLC

("Mockingbird") are integrated energy products and services companies each headquartered in

Tulsa, Oklahoma.

      3.      Louisiana Midstream provides natural gas gathering and transportation services,

*inter alia*, to natural gas producers operating in the Haynesville and Bossier shale formations

located in Louisiana and Texas.  Louisiana Midstream owns and/or operates the Mansfield and

Springridge gas gathering systems located in these areas.

      4.      Magnolia provides natural gas gathering and transportation services, *inter alia*, to

producers operating in the Haynesville and Bossier shale formations located in Louisiana.

Magnolia owns and/or operates the Mansfield and Springridge gas gathering systems located in

these areas.

---

[2]      All capitalized terms not herein defined shall have the meanings ascribed to them in the DIP
Motion.

5.      Mockingbird provides natural gas gathering and transportation services, *inter alia*, to producers operating in the Eagle Ford shale formation located in South Texas.  Mockingbird owns and/or operates the Eagle Ford Rich Gas System, the Eagle Ford Deep Oil System, the Eagle Ford Shallow Oil System and the Eagle Ford Treating System located in this area.

6.      Midstream companies like Magnolia, Mockingbird and Louisiana Midstream invest billions of dollars in developing the infrastructure necessary to gather, process, and transport domestic oil and natural gas.  In exchange, the midstream companies receive payment — usually only if oil and gas is produced — along with *dedications* of the underlying oil and natural gas mineral interests and associated acreage.  The fees charged to producers under the gathering and processing contracts are designed to provide midstream companies, over a period of time, a return on their capital investment.  The dedications burden the mineral interests to provide assurance to midstream companies that the mineral interest holder (producer) and all successor mineral interest holders will be bound by the terms of the original bargain.  Midstream companies undertake these capital investments, and their lenders finance these midstream projects, under the premise that the dedications are real property interests that bind successors to the mineral interests.

7.      Dedications also provide an economic benefit to the producer.  Producers routinely transfer or otherwise divest themselves of all, or a portion of, their mineral interests after granting the dedication to the midstream company.  During the course of a long-term gathering or processing contract, the producer/mineral interest owner may change several times, or the producer may divest itself of a material portion of its mineral interest.  The dedications in the gas gathering agreements and contracts, like other gathering and processing contracts throughout the midstream industry, allow the midstream company to forego imposing more costly upfront requirements on the producer yet still retain its original bargained-for consideration even if the

mineral interest changes hands.  Regardless of any change to the mineral ownership, any hydrocarbons produced from the subject acreage remain dedicated to the midstream company and subject to the terms of the gathering and processing contracts.

**1.  EXCO's gas gathering contract with Magnolia and Louisiana Midstream**

8.  Magnolia and Louisiana Midstream, as Gatherers, provide natural gas gathering, transportation and related services to Debtor, EXCO Operating Company, LP, as Producer ("EXCO"), pursuant to a *Gas Gathering Contract (Well – Dedication) Louisiana* effective as of January 1, 2016 (the "Magnolia GGC").

9.  The Magnolia GGC includes a dedication to Magnolia and Louisiana Midstream of certain oil and gas mineral properties owned by EXCO in Desoto, Sabine, Caddo and Bossier Parishes, Louisiana where the natural gas that EXCO produces is located and that Magnolia gathers and transports under the Magnolia GGC (the "Magnolia Dedication").  The Magnolia Dedication states in pertinent part as follows:

> Producer represents that by virtue of oil and Gas leases, fee interests, mineral interests, contractual arrangements, or other legal right, it or its Affiliates own or otherwise control certain supplies of Gas and/or oil and Gas production rights and the processing rights to all Gas produced (now or in the future) ("Dedicated Gas") from the wells described on Exhibit B ("Dedicated Interests") and located in Desoto, Sabine, Caddo, and Bossier Parishes, Louisiana.  Producer warrants that it has the right to dedicate to Gatherer and to this Contract the Dedicated Gas and Dedicated Interests.  All supplies of Gas and/or oil and Gas production rights and the processing rights to the Gas produced, acquired, owned, operated or that come under the Producer's or its Affiliates control within the Dedicated Interests after the Effective Date of this Contract are included in the definition of Dedicated Gas and Dedicated Interests.  Producer acknowledges and agrees that the dedication and commitment made by Producer and its Affiliates under this Contract is a covenant running with the land and agree that Gatherer may file memoranda of this Contract in local land records from time to time in its discretion, and Producer will enter into

any such memoranda and cooperate with Gatherer in all reasonable respects in filing them.[3]

## 2.    EXCO's gas gathering contract with Louisiana Midstream

10.    Louisiana Midstream, as Gatherer, provides natural gas gathering, transportation and related services to EXCO, as Producer, pursuant to a *Gas Gathering Contract Fixed Fee – Haynesville - Mansfield* effective as of July 12, 2013 (the "<u>Louisiana Midstream GGC</u>").

11.    The Louisiana Midstream GGC includes a dedication to Louisiana Midstream of certain underlying oil and gas mineral interests and associated acreage owned by EXCO in Desoto Parish, Louisiana where the natural gas that EXCO produces is located that Louisiana Midstream gathers and transports under the Louisiana Midstream GGC (the "<u>Louisiana Midstream Dedication</u>").  The Louisiana Midstream Dedication states in pertinent part as follows:

> Producer:  (a) exclusively dedicates and commits to the performance of this Contract the Dedicated Properties[4] and the Dedicated Gas;[5] (b) represents that the Dedicated Properties and Dedicated Gas are not otherwise subject to any gas gathering agreement or other commitment or arrangement that would permit or require the Dedicated Gas to be gathered on or delivered to any other pipeline system; (c) agrees to deliver all of the Dedicated Gas to Gatherer's System at the Receipt Points; (d) agrees to cause any existing or future Affiliates of Producer with interests in the Dedicated Properties to be bound by this Contract and to execute and join as a party to this Contract; (e) acknowledges and agrees that the dedication and commitment

---

[3]    *See* Magnolia GGC, ¶ 1.1.

[4]    "Dedicated Properties" under the Louisiana Midstream GGC means: "[A]ll interests of Producer and its Affiliates (and their successors and assigns) in oil, gas, or mineral leases, contractual agreements, or other legal rights, insofar, and only insofar, as such interests (i) cover lands located within the Dedication Area and (ii) relate to the Applicable Formations, whether owned on the Effective Date or acquired after the Effective Date, save and except as reserved and excepted under Section 1.2 (Reservations from Dedication) of this Base Contract.  *See* Louisiana Midstream GGC, ¶ 1.1(b).

[5]    "Dedication Gas" under the Louisiana Midstream GGC means: "[A]ll Gas owned or Controlled by Producer or its Affiliates and produced from the Dedicated Properties through Dedicated Wells, save and except Gas reserved and excepted under Section 1.2 (Reservations from Dedication) of this Base Contract. If for any reason the contractual right of Producer or any of its Affiliates to Control any such Gas terminates, expires, or is suspended (as used in this Section 1.1(c), "Subject Gas"), then the Subject Gas will cease to constitute Dedicated Gas upon such termination or expiration and during any period of suspension.  *See* Louisiana Midstream GGC, ¶ 1.1(c).

made by Producer and its Affiliates under this Contract is a covenant running with the land and agree that Gatherer may file memoranda of this Contract in local land records substantially in the form shown in Exhibit C from time to time in its discretion, and Producer will enter into any such memoranda and cooperate with Gatherer in all reasonable respects in filing them; (f) covenants that (i) no subsequent transfer of any interest in the Dedicated Properties will be made without the transferred Dedicated Properties being made subject to the dedication obligation and this Contract, and (ii) at the time of any such transfer, the transferor will provide to Gatherer the transferee's acknowledgement of the dedication and this Contract, including Gatherer's right to file memoranda of this Contract and the transferee's acknowledgment in local land records; and (g) covenants to take such further action as may be reasonably requested from time to time by Gatherer in furtherance of any of the foregoing. [6]

### 3.     The gas gathering contract between Mockingbird and Chesapeake

12.     Mockingbird, as Gatherer, provides natural gas gathering, transportation and related services to Chesapeake Energy Marketing, Inc., Chesapeake Operating, Inc. and Chesapeake Exploration, LLC (collectively, "Chesapeake") as Producers, pursuant to a *Gas Gathering Contract Cost of Service – Eagle Ford* effective as of July 11, 2012 (the "Mockingbird GGC," and together with the Magnolia GGC and the Louisiana Midstream GGC, the "Gas Gathering Contracts").

13.     The Mockingbird GGC includes a dedication in favor of Mockingbird of certain underlying oil and gas mineral interests and associated acreage owned by Chesapeake in Zavala, Frio, McMullen, LaSalle, Dimmit and Atascosa Counties, Texas where the natural gas that Chesapeake produces is located that Mockingbird gathers and transports under the Louisiana Midstream GGC (the "Mockingbird Dedication," and together with the Louisiana Midstream Dedication and the Magnolia Dedication, the "Williams' Dedications").   The Mockingbird Dedication states in pertinent part as follows:

---

[6]        *See* Louisiana Midstream GGC, ¶ 1.3.

Producers: (a) exclusively dedicate and commit to the performance of this Contract the Dedicated Properties[7] and the Dedicated Gas;[8] (b) represent that except as identified on the attached Exhibit B-1, the Dedicated Properties and Dedicated Gas are not otherwise subject to any gas gathering agreement or other commitment or arrangement that would permit or require the Dedicated Gas to be gathered on or delivered to any other pipeline system; (c) agree to deliver all of the Dedicated Gas to Gatherer's System at the Receipt Points; (d) agree to cause any existing or future Affiliates of Producers with interests in the Dedicated Properties to be bound by this Contract and to execute and join as a party to this Contract; (e) acknowledge and agree that the dedication and commitment made by Producers and their Affiliates under this Contract is a covenant running with the land and agree that Gatherer may file memoranda of this Contract in local land records substantially in the form shown in Exhibit D from time to time in its discretion, and Producers will enter into any such memoranda and cooperate with Gatherer in all reasonable respects in filing them; (f) covenant that (i) no subsequent transfer of any interest in the Dedicated Properties will be made without the transferred Dedicated Properties being made subject to the dedication obligation and this Contract, and (ii) at the time of any such transfer, the transferor will provide to Gatherer the transferee's acknowledgement of the dedication Gas Gathering Contract and this Contract, including Gatherer's right to file memoranda of this Contract and the transferee's acknowledgment in local land records; and (g) covenant to take such further action and to execute and deliver all such other agreements, certificates, instruments and documents as may be reasonably requested from time to time by Gatherer in furtherance of the intent of and to accomplish and evidence the purposes of this Contract and the dedication, including providing such information and making such additional, revised, or amended memoranda of this Contract and any other filings to meet the requirements of any state, county, parish, or other

---

[7]     "Dedicated Properties" under the Mockingbird GGC means: "[A]all means all interests of Producers and their Affiliates (and their successors and assigns) in oil, gas, or mineral leases, contractual agreements, or other legal rights, insofar, and only insofar, as such interests (i) cover lands located within the Dedication Area and (ii) relate to the Applicable Formations, whether owned on the Effective Date or acquired after the Effective Date, save and except as reserved and excepted under Section 1.2 (Reservations from Dedication) of this Base Contract.  *See* Mockingbird GGC, ¶ 1.1(b).

[8]     "Dedicated Gas" under the Mockingbird GGC means: "[A]ll Gas owned or Controlled by Producers or their Affiliates and produced from the Dedicated Properties through Dedicated Wells, save and except Gas reserved and excepted under Section 1.2 (Reservations from Dedication) of this Base Contract. If for any reason the contractual right of Producers or any of their Affiliates to Control any such Gas terminates, expires, or is suspended (as used in this Section 1.1(c), "Subject Gas"), then the Subject Gas will cease to constitute Dedicated Gas upon such termination or expiration and during any period of suspension."  *See* Mockingbird GGC, ¶ 1.1(c).

jurisdiction for filing and with respect to the validity and enforceability of the dedication.[9]

14.     In or around July 2, 2013, Chesapeake conveyed part of the oil, gas and mineral lease interests subject to the Mockingbird Dedication to EXCO pursuant to a Purchase and Sale Agreement between the parties (the "Chesapeake Interests").  Because a memorandum of the Mockingbird Dedication was filed of record before the Petition Date and is a covenant running with the land, the Chesapeake Interests that that EXCO purchased from Chesapeake is subject to the Mockingbird Dedication.

### 4.     The DIP Motion and Interim DIP Order.

15.     On January 16, 2018, the Debtors filed the DIP Motion, and on January 18, 2018, at Docket No. 97, the Court entered an interim order granting the DIP Motion (the "Interim DIP Order").

16.     The Interim DIP Order, *inter alia*, grants priming adequate protection liens, replacement liens, superpriority claims, and various other adequate protections to the 1.5 Lien Indenture Secured Parties, the 1.75 Lien Secured Parties, the Second Lien Secured Parties, and the RBP Secured Parties.[10]  Furthermore, the Interim DIP Order requires parties to (i) challenge the amount, validity, priority, or perfection of the liens and claims underlying the Prepetition Secured Obligations or (ii) assert any claims or defenses against the Junior Secured Parties within 60 days of the formation of a creditors' committee (the "Challenge Period").[11]  If a challenge is not timely filed:

(i) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination ( except as set forth in the Intercreditor Agreement), defense, avoidance, impairment, disallowance, recharacterization,

---

[9]      *See* Mockingbird GGC, ¶ 1.3.
[10]     *See* Interim DIP Order at ¶¶ 14-17.
[11]     Interim DIP Order at ¶ 10(e).

reduction, recoupment, recovery, for all purposes in the Bankruptcy Cases and any subsequent chapter 7 cases,

(ii) the liens on the Collateral securing the Prepetition Secured Obligations shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in the Intercreditor Agreement as applicable, not subject to setoff, subordination (except as set forth in the Intercreditor Agreement), defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, or recovery, and

(iII) the Prepetition Secured Obligations, the Junior Secured Parties, in their capacities as such, and the liens on the Prepetition Collateral securing the Prepetition Secured Obligations shall not be subject to any other or further challenge by any party-in-interest, and all parties-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors) against the Prepetition Secured Obligations, the Junior Secured Parties, and the liens securing Prepetition Secured Obligations.[12]

## II.
## OBJECTION

Williams objects to the DIP Motion and entry of any final order granting the DIP Motion to the extent that the DIP Motion and proposed final order granting same seek to impair, alter, abrogate, limit, reduce, strip or otherwise negatively or adversely affect Williams' rights under the Williams' Dedications as more fully set forth in the Gas Gathering Contracts. Williams' objection includes the Williams' Dedication created by the Louisiana Midstream GGC and the Magnolia GGC and the Williams' Dedication on the oil, gas and mineral leases created by the Mockingbird Dedication that Chesapeake transferred to EXCO in or around July 2, 2013.

The Gas Gathering Contracts contain valuable real property rights, including covenants running with the land, which cannot be decided or adversely affected by an interim or final cash

---

[12]   *Id.*, ¶ 10(f).

collateral or debtor-in-possession financing order.  Rather, such interests can only be adjudicated

pursuant to an adversary proceeding.  If the Debtors' intent in their bankruptcy cases is to

adjudicate or determine the relative rights of the parties under the Williams' Dedications,

Bankruptcy Rule 7001(2) and (9) require the Debtors to file an adversary proceeding to determine

the extent of Williams' interests represented or to obtain a declaratory judgment that Williams'

interest is not a real property interest that runs with the land.[13]  Bankruptcy Rule 7001 is mandatory

and establishes a right to specific due process guaranteed under the Fifth Amendment to the United

States Constitution.[14]  Motions or other requests for relief that fail to comply with the requirements

of Bankruptcy Rule 7001 have been denied as procedurally improper.[15]  The same is true of an

action seeking a declaratory judgment regarding the validity of a party's interest in property.[16]

Put simply, Williams' state law property rights cannot be adjudicated or impaired in

conjunction with the Debtors' efforts to obtain post-petition financing and to grant adequate

protection and superpriority liens to its post-petition lenders pursuant to 11 U.S.C. § 364(d)(1).

---

[13]     *See* FED. R. BANKR. P. 7001(2), (9).

[14]     *E.g., Feld v. Zale Corp. (In Re Zale Corp.*), 62 F.3d 746, (5th Cir. 1995) (reversing bankruptcy and district court because a third-party injunction could not be granted without conducting a full adversary proceeding under Rule 7001 absent a waiver); *In re Village Mobile Homes, Inc.,* 947 F.2d 1282, 1283 (5th Cir. 1991) (reversing bankruptcy and district court in granting conversion damages, because it was an action "to recover money or property" that could only be determined in an adversary proceeding absent a waiver by the non-movant under Bankruptcy Rule 7001); *Haber Oil Co. v. Swinehart (In re Haber Oil*), 12 F.3d 426, 443 (5th Cir. 1994) (reversing bankruptcy court's determination of equitable ownership at confirmation hearing as procedurally improper because no adversary proceeding was filed); *In re Mansaray-Ruffin*, 530 F.3d 230, 237 (3d Cir. 2008) (holding that a party's due process rights were violated where a party deemed a property interest invalid through a plan because a confirmation hearing does not provide the same due process protections as an adversary proceeding); *In re Sabine Oil & Gas Corp*., 547 B.R. 66, 73 (Bankr. S.D.N.Y. 2016) (determining that an adversary proceeding, as opposed to motion practice under 11 U.S.C. § 365, was required in order to determine whether dedication provisions in the gas gathering contracts at issue were covenants running with the land under applicable state law).

[15]     *Mansaray-Ruffin*, 530 F.3d at 238 (holding that the adversary proceeding requirement of Bankruptcy Rule 7001(2) "is mandatory and establishes a right to specific process that must be afforded"); *see also In re DBSI, Inc.*, 432 B.R. 126, 134–35 (Bankr. D. Del. 2010) (denying motion for declaratory judgment as procedurally improper).

[16]     *See* Rule 7001(9).

Accordingly, in order to resolve any doubt on this issue the final order granting the DIP Motion should specifically provide that the order is entered without prejudice to the rights of any party-in-interest that has or claims a dedication interest or similar real property interest in property of the Debtors or of the estate created by or arising under a gas gathering contract or agreement and that all rights to later adjudicate or determine said interests are reserved.

Similarly, any final order granting the DIP Motion should exempt parties holding real property dedication interests arising under or created by a gas gathering contract or agreement from having to file challenges to maintain their prepetition property interests.  This can be accomplished by amending the proposed final order granting the DIP Motion as follows:

> Notwithstanding anything contained in this Order to the contrary, and for the avoidance of doubt, statutory lien creditors <u>and parties-in-interest that have or claim a dedication interest created by or arising under a gas gathering agreement or contract or other similar real property interest under applicable law</u>, shall not be required to file a lien ranking adversary proceeding prior to the expiration of the Challenge Period to preserve or protect the priority of their respective statutory lien, <u>dedication or similar real property interests</u> under applicable non-bankruptcy law.[17]

### III.
### RESERVATION OF RIGHTS

Williams reserves the right to supplement this Objection on or before the final hearing on the DIP Motion set on February 22, 2018, or to join any further objections to the DIP Motion.

### IV.
### CONCLUSION

**WHEREFORE**, Williams respectfully requests that this Court grant its limited objection to the DIP Motion as more fully set forth herein and grant Williams any other and further relief that is just and equitable.

---

[17]     *See* Interim DIP Order, ¶ 22(c).

DATED:  February 15, 2018

Respectfully submitted,

**HALL, ESTILL HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

By:     _____*/s/ Steven W. Soulé*_____

Steven W. Soulé, Oklahoma Bar No. 13781
John T. Richer, Texas Bar No. 24068531
Dustin L. Perry, Oklahoma Bar No. 31183
320 South Boston Avenue, Suite 200
Tulsa, Oklahoma 74103-3706
Telephone:  (918) 594-0400
Facsimile:  (918) 594-0505
Email:  ssoule@hallestill.com
          jricher@hallestill.com
          dperry@hallestill.com

**ATTORNEYS FOR THE WILLIAMS COMPANIES, INC., MAGNOLIA MIDSTREAM GAS SERVICES, LLC, LOUISIANA MIDSTREAM GAS SERVICES, LLC and MOCKINGBIRD MIDSTREAM GAS SERVICES, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of February, 2018, a true and correct copy of the foregoing Limited Objection was served on all parties listed below via fist-class, postage prepaid, U.S. Mail.  I further certify that all parties entitled to notice via the Court's electronic notification system were served at the time of electronic filing:

**Debtors**
EXCO Resources, Inc., et al.
12377 Merit Drive, Suite 1700
Dallas, Texas 75251
Attn.: Heather Lamparter

**Office of the U.S. Trustee**
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, Texas 77002

**Debtors' Counsel**
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attn: Christopher T. Greco
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
Attn.: Patrick J. Nash and Alexandra Schwarzman

Gardere Wynne Sewell LLP
1000 Louisiana St., Suite 2000
Houston, Texas 77002
Attn.: Marcus A. Helt and Michael K. Riordan

**Counsel to Certain of the 1.5 Lien Senior Secured Noteholders and the 1.75 Lien Term Loan Lenders**
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Attn.: Andrew Glenn

**Counsel to the Ad Hoc Unsecured Noteholders Committee**
Brown Rudnick LLP
7 Times Square
New York, New York 10036
Attn.: Robert Stark and Steven Levine
Counsel to the First Lien Agent
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Attn.: Louis R. Strubeck, Kristian W. Gluck, and Ryan E. Manns

**Counsel to A Certain 1.5 Lien Senior Secured Noteholder and a 1.75 Lien Term Loan Lender**
White & Case, LLP
1221 Avenue of the Americas
New York, New York, 10020
Attn.: Thomas Lauria

**Counsel to a Single Large Unsecured Noteholder**
Quinn Emanuel, LLP
51 Madison Avenue
22nd Floor
New York, New York 10010
Attn.: Benjamin Finestone

**Counsel to the Issuing Bank**
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017
Attn: Sandeep Qusba and Nicholas Baker

- 13 -

Bracewell LLP
185 Asylum Street
Hartford, Connecticut 06103
Attn.: Kurt Mayr

## **Members of the Committee of Unsecured Creditors and Member's Counsel**

| Member | Counsel |
|---|---|
| Wilmington Savings Fund Society, FSB<br>Attn: Patrick J. Healy<br>500 Delaware Avenue, 11th Floor<br>P.O. Box 957<br>Wilmington, DE 19899 | Seward & Kissel, LLP<br>John R. Ashmead, Esq.<br>One Battery Plaza<br>New York, NY 10004 |
| FTS International Services, LLC<br>Attn: Jared Vitemb<br>777 Main Street, Suite 2900<br>Fort Worth, TX 76109 | Cozen O'Connor<br>Mark Felger, Esq.<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801 |
| Baker Hughes, a GE Company<br>Attn: Christopher J. Ryan<br>2001 Rankin Road<br>Houston, TX 77073 | Snow Spence Green, LLP<br>Kenneth Green, Esq.<br>2929 Allen Parkway, Suite 2800<br>Houston, TX 77019 |
| REME, LLC<br>d/b/a LEAM Drilling Services<br>Attn: Kathleen Glasgow<br>3114 W. Old Spanish Trail<br>New Iberia, LA 70560 | Phillip P. Owens II, Esq.<br>6907 N.W. 122nd Street<br>Oklahoma City, OK 73142-3903 |
| DRW Securities, LLC<br>Attn: Sinan Kermen<br>540 W. Madison<br>Chicago, IL 60661 | Brown Rudnick LLP<br>Robert J. Stark, Esq.<br>Seven Times Square<br>New York, NY 10036 |
| Cross Sound Management LLC<br>Attn: David Dunn<br>10 Westport Road, Bldg. C, Suite 202<br>Wilton, CT 06897 | Quinn Emanuel<br>Benjamin I. Finestone, Esq.<br>51 Madison Ave., 22nd Floor<br>New York, NY 10010 |
| | Jackson Walker LLP<br>Patty Tomasco, Esq.<br>1401 McKinney St., Suite 1900<br>Houston, TX 77010 |

Nabors Drilling Technologies USA, Inc.  
Attn: Lauri J. McDonald  
515 W. Greens Road, Suite 1200  
Houston, TX 77067-4525

Dore Law Group, P.C.  
Zachary S. McKay, Esq.  
17171 Park Row, Suite 160  
Houston, TX 77084

*/s/ Steven W. Soulé*  
Steven W. Soulé