# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| EXCO RESOURCES, INC., *et al.*,[1] | § | Case No. 18-30155 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | (Emergency Hearing Requested) |
| | § | |

## JOINT EMERGENCY MOTION
## TO EXTEND THE EXCLUSIVITY PERIODS TO FILE
## A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

> **THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE CONDUCTED ON THIS MATTER ON <u>FEBRUARY 15, 2019, AT 1:30 P.M. (CT)</u> IN COURTROOM 404, 4TH FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK STREET, HOUSTON, TEXAS 77002.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: EXCO Resources, Inc. (2779); EXCO GP Partners Old, LP (1262); EXCO Holding (PA), Inc. (1745); EXCO Holding MLP, Inc. (1972); EXCO Land Company, LLC (9981); EXCO Midcontinent MLP, LLC (0557); EXCO Operating Company, LP (1261); EXCO Partners GP, LLC (1258); EXCO Partners OLP GP, LLC (1252); EXCO Production Company (PA), LLC (7701); EXCO Production Company (WV), LLC (7851); EXCO Resources (XA), LLC (7775); EXCO Services, Inc. (2747); Raider Marketing GP, LLC (6366); and Raider Marketing, LP (4295). The location of the Debtors' service address is: 12377 Merit Drive, Suite 1700, Dallas, Texas 75251.

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] and the Official Committee of Unsecured Creditors (the "Committee") respectfully state the following in support of this motion:

## Relief Requested

1.     The Debtors and the Committee jointly seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), extending the period during which the Debtors have the exclusive right to file a chapter 11 plan (the "Filing Exclusivity Period") through and including April 1, 2019, and the deadline under which the Debtors have the exclusive right to solicit a plan filed during the Filing Exclusivity Period (the "Solicitation Exclusivity Period" and, together with the Filing Exclusivity Period, collectively, the "Exclusivity Periods") through and including May 31, 2019.[3]

## Jurisdiction and Venue

2.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). The Debtors and the Committee confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with

---

[2]   A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Tyler Farquharson, Chief Financial Officer and Treasurer of EXCO Resources, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 29], filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on January 15, 2018 (the "Petition Date").

[3]   Capitalized terms used but not defined in this motion have the meaning ascribed to them in the Plan (as defined herein).

this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are section 1121 of title 11 of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Preliminary Statement**

5.      The Debtors have been diligently pursuing a consensual reorganization since the outset of these chapter 11 cases.  Following the commencement of these cases, the Debtors undertook a dual-track restructuring process, pursuant to which the Debtors solicited bids for a sale of some or all of their assets while simultaneously working with their creditor groups to develop a comprehensive plan of reorganization.

6.      The Debtors, with the assistance of their advisors, marketed their assets both as a whole and in three distinct asset packages.  Beginning in January 2018, the Debtors and their advisors contacted over 275 potential purchasers, executed approximately 100 non-disclosure agreements, and received 25 indications of interest during the first round of the marketing process. The Debtors and their advisors analyzed the bids received and selected approximately 12 bidders to participate in the second round of the bidding process.  The Debtors engaged in extensive negotiations with a potential purchaser of their East Texas/North Louisiana assets throughout the summer of 2018, but ultimately determined it was not in the best interests of the Debtors' estates to move forward with such transaction.

7.      In parallel, the Debtors engaged in restructuring negotiations with all key creditor constituencies, including the holders of the majority of the Debtors' prepetition funded

indebtedness and the Committee.  The Debtors facilitated multiple formal and informal discussions and in-person meetings with the key stakeholders and their advisors throughout the spring and summer of 2018 regarding the terms of a consensual and comprehensive restructuring transaction. At the same time, the Debtors continued their investigation of potential estate claims and causes of action against third parties, including the prepetition secured lenders, and provided documents and information to the Committee in furtherance of the Committee's investigation of the same.

8.     Following significant engagement with these key constituents, including the exchange of several restructuring proposals between certain of the prepetition secured creditors and the Committee, the Debtors requested in July 2018 that the Honorable Chief Judge David R. Jones be appointed as a mediator in these chapter 11 cases.  Mediation commenced on August 6, 2018 and continued on August 7, August 27, and September 21, 2018.  At the mediation, a resolution was reached regarding many potential claims and causes of action that may have been brought by the Debtors.

9.     Following the conclusion of mediation, the Debtors filed the *Settlement Joint Chapter 11 Plan of Reorganization of EXCO Resources, Inc. and Its Debtor Affiliates* (as amended, supplemented, or modified from time to time, the "Plan") and a disclosure statement in connection therewith, which this Court approved on November 5, 2018.  On November 10, 2018, the Debtors launched solicitation of votes to accept or reject the Plan which received overwhelming support at every level of the capital structure.

10.    Simultaneously with the solicitation process, the Debtors launched a marketing process to procure the exit financing necessary to consummate the First Plan.  As part of this process, the Debtors contacted 33 potential lenders, including 18 traditional lenders and 15 non-traditional lenders, and executed 17 non-disclosure agreements.  Following a three-week diligence

period, the Debtors received proposals from five potential lenders.  The Debtors evaluated these initial proposals, engaged in further negotiations with the potential lenders over the following two weeks, and received final proposals from the potential lenders on October 26, 2018.

11.     The Debtors were fully prepared to proceed to confirmation of the First Plan in December 2018 with a goal of emerging prior to the end of the year.  Unfortunately, the oil and gas markets began experiencing significant volatility, with the largest monthly percentage decline in oil prices since the 2008 recession occurring in November 2018 and an overall decline in natural gas prices following a temporary spike.  The Debtors ultimately concluded that they were unable to raise the necessary exit financing to move forward with confirmation of the First Plan, and adjourned the Confirmation Hearing to a date to be determined in 2019.

12.     Since that time, the Debtors have continued to work with all key constituencies to develop consensus regarding an alternative restructuring transaction, including through additional mediation with Chief Judge Jones and continuous formal and informal communication with all parties.

13.     At a status conference on January 14, 2019, the Debtors committed to filing a revised plan of reorganization by February 15, 2019.[4]  To provide sufficient time for a consensual plan of reorganization to be negotiated before that time, the Debtors' largest secured creditors and the Committee agreed to support a further extension of the Debtors' exclusive periods to file and solicit votes on a plan through and including February 15, 2019 and April 16, 2019, respectively (from January 31, 2019 and April 1, 2019, respectively).  Additionally, the Debtors secured an

---

[4]     *See In re EXCO Resources, Inc.*, No. 18-30155 (Bankr. S.D. Tex.), Hr'g Tr. January 14, 2019, 11:2–14.

extension of the maturity of their DIP facility through May 22, 2019 to provide sufficient funding for the remainder of these cases.[5]

14.     On January 22, 2019,  the Debtors filed the *Stipulation and Agreed Order Extending Exclusivity Periods and Challenge Period* [Docket No. 1592], which was recharacterized as a motion to extend exclusivity pursuant to the Court's *Order Regarding Stipulation* [Docket No. 1595] (the "Stipulation Order").   The Stipulation Order also set January 31, 2019 as the deadline (the "Extension Objection Deadline") for any party in interest to object to an extension of the exclusivity periods.   As no objections were timely filed by the Extension Objection Deadline, the Debtors filed a proposed form of order granting the extension of exclusivity, which the Court entered on February 1, 2019 [Docket No. 1610].

15.     The Debtors and the Committee now jointly request a further 45-day extension of the Exclusivity Periods.  The progress made to date in these cases, as described herein, is the direct result of the Debtors' and their stakeholders' tremendous efforts.  The Debtors and the Committee are mindful of the Court's guidance to drive these chapter 11 cases toward a resolution, and believe that the best use of time and resources over the next 45-days is to allow for an additional multi-day mediation with Chief Judge Jones to finalize and document a confirmable plan.  In the event consensus with all levels of the capital structure is not achievable, the Debtors and the Committee will continue to engage regarding potential plan structures and litigation schedules, including the Committee's planned request for standing to bring certain claims and causes of action belonging to the Debtors' estates.

---

[5]     *See Stipulation and Agreed Order Extending DIP Facility Maturity Date* [Docket No. 1577].

16.     For the foregoing reasons, and the reasons more specifically described herein, the Debtors and the Committee jointly request a 45-day extension of the Exclusivity Periods.

**Basis for Relief**

**I.     Exclusivity Periods May Be Extended for Cause.**

17.     Section 1121(b) of the Bankruptcy Code establishes an initial period of 120 days after the commencement of a chapter 11 case during which only a debtor may file a plan and an additional 60-day period thereafter during which only the debtor may solicit votes for a plan. Section 1121(d) of the Bankruptcy Code permits a debtor to extend these periods to up to 18 months and 20 months, respectively, "for cause."  Although the Bankruptcy Code does not define "cause," the promotion of an orderly, consensual, and successful reorganization of a debtor's affairs provides ample justification to extend exclusivity.  *See In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) (noting that the meaning of "cause" under section 1121 should be viewed in context of the Bankruptcy Code's goal of fostering reorganization); *In re Mirant Corp.*, No. 4-04-CV-476-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) (noting that an extension of exclusivity is typically granted where "the debtor showed substantial progress had been made in negotiations toward reorganization"); *In re Lehman Bros. Holdings, Inc.*, No. 08-13555 (Bankr. S.D.N.Y.), Hr'g Tr. July 15, 2009, 137:8–11 (granting debtors' second exclusivity extension because debtors should be entitled to as much time as needed to develop their best plan and "exclusivity was designed, in part, to give debtors that privilege, unless it's being abused").

18.     The decision to extend these exclusivity periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case.  *See Mirant*, 2004 WL 2250986, at * 2 (noting that the decision to extend exclusivity "lies within the bankruptcy court's discretion"); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100–01 (Bankr. E.D.

Tex. 1996) (extending exclusivity based on the totality of the circumstances).  Courts examine a number of factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of the exclusivity periods.  These factors include:

a.   the size and complexity of the case;

b.   the need for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

c.   whether the debtor has made progress in negotiations with its creditors;

d.   the existence of good faith progress toward reorganization;

e.   whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands;

f.   whether the debtor has demonstrated reasonable prospects for filing a viable plan;

g.   the fact that the debtor is paying its bills as they become due;

h.   the amount of time which has elapsed in the case; and/or

i.   whether an unresolved contingency exists.

19.   *See, e.g.*, *Express One*, 194 B.R. at 100–01 (listing factors relevant to whether "cause" exists to extend exclusivity periods) (citing *In re Grand Traverse Development Co., Ltd.*, 147 B.R. 418 (Bankr. W.D. Mich. 1992)); *see also In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (denying motion to terminate exclusivity based on factors for cause).

20.   Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods.  *See, e.g.*, *Express One*, 194 B.R. at 100–01 (listing all nine factors later set forth in *Adelphia*, but relying on only

four as relevant in determining whether there was "cause" to extend exclusivity); *see also In re Excel Maritime Carriers Ltd.*, 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013) (noting in an exclusivity termination context that the ultimate consideration for the court is "what will best move the case forward in the best interest of all parties").

21.     Here, as set forth in detail below, the relevant factors strongly favor granting the 45-day extension of the Exclusivity Periods.

## II.     Cause Exists to Extend the Debtors' Exclusivity Periods.

### A.     The Debtors' Chapter 11 Cases Are Large and Complex.

22.     Both Congress and courts have acknowledged that the size and complexity of a debtor's case alone may provide cause for extending a debtor's exclusivity periods.  *See Express One*, 194 B.R. at 100 (approving the debtor's third exclusivity extension and noting that "the traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization").  The Debtors' cases involve over a billion dollars of funded debt, a complex set of asset packages in various jurisdictions, and stakeholders with divergent interests across the Debtors' capital structure, all in the context of a volatile and uncertain commodities market.  The precipitous decline in oil and gas prices in the last month of 2018— which constricted the capital markets and hindered the Debtors' exit financing process—highlights the need for the Debtors to further deleverage their existing capital structure from the transactions contemplated in the First Plan, requiring additional time to negotiate consensual modifications to the previously mediated settlement.  Accordingly, the first factor weighs in favor of, and provides sufficient cause for, the Court to further extend the Exclusivity Periods.

**B.** **The Debtors Have Demonstrated the Ability to Develop and Propose a Viable Chapter 11 Plan, and an Extension Will Provide the Time Needed to Propose a Revised Plan Reflecting the Current Conditions.**

23.     Several of the factors courts consider relate to a debtor's progress towards and ability to propose a viable plan of reorganization.  Specifically, courts have found cause to extend a debtor's exclusive period to file and solicit a plan where the debtor showed significant efforts to develop and promote a consensual reorganization plan.  *See, e.g.*, *Mirant*, 2004 WL 2250986, at *2 (noting that an extension of exclusivity is typically granted where "the debtor showed substantial progress had been made in negotiations toward reorganization"); *In re MSR Resort Golf Course LLC*, No. 11-10372 (Bankr. S.D.N.Y.), Hr'g Tr. Nov. 3, 2011, 377:2–8 (granting debtors' second exclusivity extension based, in part, on compromises reached between the debtors and their stakeholders and concluding that the debtors' "good-faith progress is also evidenced by these settlements, which evidence . . . progress in trying to reach some consensus on the end game strategy in these cases, and the timing for such a strategy"); *In re Tribune Co.*, No. 08-13141 (Bankr. D. Del.), Hr'g Tr. Dec. 7, 2009, 70:2–4 (extending exclusivity based, in part, on the fact that "there are ongoing discussions, which may or may not result in a global resolution").

24.     As discussed, the Debtors have worked diligently since the outset of these chapter 11 cases to execute on a dual-path restructuring strategy, marketing substantially all of their assets while simultaneously working with their key creditor constituencies on the terms of a comprehensive restructuring transaction.  More specifically, since the appointment of Judge Jones as the mediator in these cases, the Debtors:

        a.     facilitated extensive formal and informal negotiations with certain of their secured lenders and the Committee to settle potential estate claims and causes of action, including multiple days of mediation;

      b.      negotiated and filed a consensual plan of reorganization that resolved multiple potential claims and causes of action;

      c.      received this Court's approval of a disclosure statement and solicitation and confirmation timeline related to the First Plan over the objection of certain parties;

      d.      completed solicitation of votes in favor of the First Plan, receiving broad support from across their capital structure for the restructuring transactions proposed therein;

      e.      launched a marketing process for the exit financing contemplated by the First Plan and engaged Royal Bank of Canada to syndicate the exit facilities;

      f.      consensually resolved a majority of the filed objections to the First Plan in advance of the confirmation hearing scheduled for December 2018;

      g.      filed objections to over 700 claims; and

      h.      worked to settle or resolve significant litigations and contested matters, including achieving settlements with Azure,[6] BG,[7] and BHP,[8] among others.

25.      Accordingly, in light of the significant efforts to date to promote consensus and the progress to date in developing and prosecuting a plan, these factors (the need for sufficient time to renegotiate a plan, the progress in negotiations with creditors towards reorganization, and the reasonable prospects for filing a viable plan) also weigh heavily in favor of an extension of the Exclusivity Periods.

---

[6]    "Azure" refers to, collectively, Azure Midstream Energy LLC and TGG Pipeline, Ltd., Azure Midstream Holdings, LLC, TGG Pipeline, Ltd.

[7]    "BG" refers to BG Production Company, LLC.

[8]    "BHP" refers to, collectively, BHP Billiton Petroleum (KCS Resources), LLC, f/k/a KCS Resources LLC, BHP Billiton Petroleum Properties (N.A.), LP, BHP Billiton Petroleum (TxLa Operating) Company, f/k/a Petrohawk Operating Company, Petrohawk Energy Corporation, and Winwell Resources Inc.

### C.      The Debtors Are Not Pressuring Creditors By Requesting an Extension of the Exclusivity Periods.

26.      In addition, the Debtors are not using their request for an extension as a sword to improperly pressure their creditors in restructuring negotiations.  The few cases where courts have found this factor to weigh against an extension of exclusivity involved fact patterns where the debtor used the threat of delay as a tactic to force creditors to make concessions.  *See, e.g.*, *In re GMG Capital Partners III, L.P.*, 503 B.R. 596 (Bankr. S.D.N.Y. 2014) (debtor used delay in bankruptcy to allow time for stock portfolio to appreciate in value, against primary creditor's wishes to liquidate portfolio); *In re General Bearing Corp.*, 136 B.R. 361 (Bankr. S.D.N.Y. 1992) (debtor used delay in bankruptcy to force concessions from secured creditor, which otherwise was entitled to its assets); *In re Pub. Servs. Co. of N.H.*, 99 B.R. 155 (Bankr. D.N.H. 1989) (debtor used delay in bankruptcy to force concessions from stakeholders in utility rate setting negotiations); *In re Lake in the Woods*, 10 B.R. 338 (E.D. Mich. 1981) (debtor used threat of delay in bankruptcy to force concessions from secured lender with which it was involved in title dispute relating to debtor's only asset).

27.      In contrast, here, the Committee joins the Debtors in seeking a 45-day extension of the Exclusivity Periods to keep all stakeholders focused on negotiating a consensual plan or, in the alternative, negotiate an agreed-to litigation schedule with the Committee.  The Debtors have no desire to prolong their stay in bankruptcy, as evidenced by the Debtors' attempt to seek confirmation of the First Plan prior to year-end 2018.  Rather, the Debtors and the Committee seek to avoid value-destructive litigation regarding multiple plans to the extent possible.  Accordingly, the Debtors submit that this factor also weighs in favor of granting an extension of the Exclusivity Periods.

12

**D.      The Remaining Factors Weigh in Favor of an Extension of the Exclusivity Periods or Are Neutral.**

28.      The remaining factors either weigh in favor of the Debtors' and the Committee's joint extension request or are neutral.  *First*, the Debtors have paid their undisputed postpetition debts in the ordinary course of business or as otherwise provided by Court order.  *Second*, although a year has passed since the commencement of these cases, ample precedent in this district supports the Debtors' and the Committee's joint request to extend the expiration of the Exclusive Filing Period to a date within the total 18-month period allowed by section 1121(d) of the Bankruptcy Code.  *See, e.g.*, *In re GenOn Energy, Inc.*, No. 17-33695 (Bankr. S.D. Tex. Apr. 9, 2018) (granting second extension of exclusive filing period of approximately 8 months for a total 18-month exclusive filing period); *In re Sandridge Energy, Inc.*, No. 16-32488 (Bankr. S.D. Tex. Feb. 8, 2017) (granting second extension of exclusive filing period of approximately 10 months for a total of 18-month exclusive filing period); *In re Sherwin Alumina Co., LLC*, No. 16-20012 (Bankr. S.D. Tex. Aug. 23, 2016) (granting second extension of exclusive filing period of approximately 90 days for a total 12-month exclusive filing period).  *Third*, there are no unresolved contingencies that would apply in these cases.  *See In re GMG Capital Partners III, L.P.*, 503 B.R. 596, 603 (Bankr. S.D.N.Y. 2014) (noting that an extension of exclusivity may be justified where certain external events must be resolved before a plan can be proposed).

29.      Thus, in light of the totality of the circumstances, the factors used by courts to determine whether to extend a debtor's exclusivity periods weigh heavily in favor of an extension of the Exclusivity Periods.

## Emergency Consideration

30.      Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors and the Committee respectfully request emergency consideration of this motion.  Absent the Court's grant of the relief

requested herein, the Filing Exclusivity Period will expire on February 15, 2019. Expiration of the Exclusivity Periods could hinder the Debtors' ability to effectively and efficiently move these chapter 11 cases to a successful conclusion. Accordingly, the Debtors and the Committee respectfully request that the Court approve the relief requested in this motion on an emergency basis. In accordance with Bankruptcy Local Rule 9013-1(i), the undersigned counsel for the Debtors and the Committee certify that the information in this motion is accurate.

### Notice

31.     The Debtors will provide notice of this motion to: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the lenders under the Debtors' debtor-in-possession financing facility and counsel thereto; (c) the indenture trustee for the Debtors' 1.5 lien senior secured notes and counsel thereto; (d) the administrative agent and collateral trustee under the Debtors' 1.75 lien term loan facility and counsel thereto; (e) administrative agent under the Debtors' second lien term loan facility and counsel thereto; (f) the indenture trustee for the Debtors' 2018 senior notes; (g) the indenture trustee for the Debtors' 2022 senior notes; (h) counsels to certain 1.5 lien noteholders and 1.75 lien lenders; (i) counsel to the official committee of unsecured creditors; (j) counsel to Cross Sound Management LLC; (k) the United States Attorney's Office for the Southern District of Texas; (l) the Internal Revenue Service; (m) the United States Securities and Exchange Commission; (n) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (o) the state attorneys general for states in which the Debtors conduct business; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors and the Committee respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: February 15, 2019

By: */s/ Christopher T. Greco, P.C.*

Christopher T. Greco, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: christopher.greco@kirkland.com
*-and-*
Patrick J. Nash, Jr. P.C. (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: patrick.nash@kirkland.com
Email: alexandra.schwarzman@kirkland.com
*-and-*
Marcus A. Helt (TX: 24052187)
Michael K. Riordan (TX: 24070502)
**FOLEY GARDERE**
1000 Louisiana St., Suite 2000
Houston, Texas 77002
Telephone: (214) 999-4526
Facsimile: (214) 999-3526
Email: mhelt@foley.com
Email: mriordan@foley.com
*Counsel to the Debtors and Debtors in Possession*

By: */s/ Robert J. Stark*

Robert J. Stark (admitted *pro hac vice*)
Sigmund S. Wissner-Gross (admitted *pro hac vice*)
Kenneth J. Aulet (admitted *pro hac vice*)
Gerard T. Cicero (admitted *pro hac vice*)
**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: swissnergross@brownrudnick.com
Email: rstark@brownrudnick.com
Email: kaulet@brownrudnick.com
Email: gcicero@brownrudnick.com
Email: asanneh@brownrudnick.com
Steven B. Levine (admitted *pro hac vice*)
**BROWN RUDNICK LLP**
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
Email: slevine@brownrudnick.com
Patricia B. Tomasco (TX: 01797600)
Matthew D. Cavenaugh (TX: 24062656)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: ptomasco@jw.com
Email: mcavenaugh@jw.com
*Counsel for the Unsecured Creditor Committee*

**<u>Certificate of Service</u>**

I certify that on February 15, 2019, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Christopher T. Greco, P.C.*
Christopher T. Greco, P.C.
