**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| EXCO RESOURCES, INC., *et al.*,[1] | § | Case No. 18-30155 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**DEBTORS' MOTION FOR**
**ENTRY OF AN ORDER (I) AUTHORIZING AND**
**APPROVING THE SETTLEMENT BY AND AMONG**
**THE DEBTORS AND CHESAPEAKE, AND (II) GRANTING RELATED RELIEF**

> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON MARCH 20, 2019 AT 1:30 PM IN COURTROOM 404, 4TH FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK STREET, HOUSTON, TEXAS 77002.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state the following in support of this motion:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  EXCO Resources, Inc. (2779); EXCO GP Partners Old, LP (1262); EXCO Holding (PA), Inc. (1745); EXCO Holding MLP, Inc. (1972); EXCO Land Company, LLC (9981); EXCO Midcontinent MLP, LLC (0557); EXCO Operating Company, LP (1261); EXCO Partners GP, LLC (1258); EXCO Partners OLP GP, LLC (1252); EXCO Production Company (PA), LLC (7701); EXCO Production Company (WV), LLC (7851); EXCO Resources (XA), LLC (7775); EXCO Services, Inc. (2747); Raider Marketing GP, LLC (6366); and Raider Marketing, LP (4295).  The location of the Debtors' service address is:  12377 Merit Drive, Suite 1700, Dallas, Texas 75251.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Tyler Farquharson, Chief Financial Officer and Treasurer of EXCO Resources, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 29] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief

## **Relief Requested**

1.      By this motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) authorizing the Debtors' entry into a settlement and release agreement (the "Chesapeake Settlement Agreement") by and among Debtor EXCO Resources Inc. ("EXCO") on behalf of itself and each of its affiliated Debtors, on the one hand, and Chesapeake Energy Marketing, L.L.C. f/k/a Chesapeake Energy Marketing, Inc. ("CEML"), Chesapeake Exploration, L.L.C. f/k/a Chesapeake Exploration, LP ("CELLC"), Chesapeake Operating, L.L.C. f/k/a Chesapeake Operating, Inc. ("COLLC"), Chesapeake Louisiana LP ("Chesapeake Louisiana"), and Chesapeake Energy corporation ("CEC") (collectively, with any affiliates of any of the foregoing, "Chesapeake," and together with the Debtors, the "Parties"), on the other hand, attached as **Exhibit 1** to the Order, memorializing a settlement of issues between the Parties (the "Settlement"), and (b) granting related relief.

## **Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the Parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. § 1409.

---

filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on January 15, 2018 (the "Petition Date").

4.     The statutory grounds for the relief requested in this motion are sections 105(a) and 363(b) of the Bankruptcy Code, and Bankruptcy Rules 2002 and 9019.

<u>**Background and the Settlement Agreement**</u>

**I.     The Contractual Relationship Between the Parties.**

5.     On September 1, 2009, Debtor EXCO Operating Company, LP ("<u>EOC</u>") and CEML executed that certain Base Contract for the Sale and Purchase of Natural Gas (the "<u>NAESB</u>").

6.     In July 2013, EOC purchased approximately $700 million of South Texas assets from Chesapeake, primarily consisting of Eagle Ford shale oil wells (the "<u>South Texas Sale</u>").  The Eagle Ford oil wells produce casinghead gas as a by-product of the oil production.

7.     In connection with the South Texas Sale, EOC and CEML entered into Transaction Confirmation No. 7 ("<u>TC7</u>"), which governed the casinghead gas sold by the Debtors to Chesapeake between April 1, 2013 and June 30, 2032.  On May 31, 2017, CEML terminated TC7.

8.     In addition to the NAESB, the Parties currently are party to the following contracts (collectively, together with the NAESB, the "<u>Active Chesapeake Contracts</u>"):

- those certain Transaction Confirmations Nos. 8-11 by and between EOC and CEML related to the purchases of gas from the Eagle Ford region (the "<u>Active Eagle Ford TCs</u>, and together with TC6 (as defined herein) and T7C, the "<u>Chesapeake TCs</u>");
- that certain Eagle Ford Purchase and Sale Agreement dated as of July 2, 2013 by and between EOC and CELLC (the "<u>Eagle Ford PSA</u>");
- that certain crude oil purchase contract dated July 31, 2013 by and between EOC and CEML (as amended from time to time, the "<u>Crude Oil Purchase Contract</u>");
- that certain joint operating agreement dated as of February 4, 2010 by and between Wilson Production 16, L.L.C. and Chesapeake Louisiana (the "<u>Mahoney Operating Agreement</u>");
- that certain joint operating agreement dated as of February 4, 2010 by and between Wilson Production 16, LLC and Chesapeake Louisiana (the "<u>Louisiana Operating Agreement</u>");

- that certain Settlement Agreement and Mutual Release effective as of May 16, 2016 by and between KM Ranch Properties, Ltd., CELLC, COLLC, OOGC America LLC, Jamestown Resources, LLC, and EOC (the "<u>KM Ranch Settlement Agreement</u>"); and
- that certain Farmout Agreement dated as of July 31, 2013 by and between EOC and CELLC (as amended, the "<u>Farmout Agreement</u>").

9.      On August 18, 2016, EOC underwent a divisional merger (the "<u>Divisional Merger</u>") under Texas law, pursuant to which the NAESB and TC6 were purportedly allocated to and vested in Debtor Raider Marketing, LP ("<u>Raider</u>") by operation of law.

**II.     Prepetition Litigation Between the Parties.**

10.     On July 1, 2016, EOC filed a complaint against COLLC and Chesapeake Louisiana, styled as *EXCO Operating Company, LP v. Chesapeake Operating, LLC, et. al.* [Case No. 5:16-cv-0097-EEF-MHL] in the United States District Court for the Western District of Louisiana (the "<u>Louisiana Lawsuit</u>"), alleging that Chesapeake had improperly charged EOC's interests with certain post-production costs and asserting damages of approximately $1.5 million.  Chesapeake filed its answer and asserted various affirmative defenses, including the right to setoff.

11.     On June 6, 2017, certain of the Debtors commenced suit against Chesapeake, styled as *Raider Marketing, LP, EXCO Resources, Inc., EXCO Operating Company, LP, and EXCO Land Company, LLC v. Chesapeake Energy Marketing LLC and Chesapeake Energy Corporation* [Civil Action No. 3:17-CV-1516-N], in the United States District Court for the Northern District of Texas (the "<u>Texas Litigation</u>, and together with the Louisiana Litigation, the "<u>Prepetition Litigation</u>"), seeking to recover damages related to Chesapeake's termination of TC7.  Chesapeake filed its answer and asserted various affirmative defenses and counterclaims, including the right to setoff.

**III.    The Chapter 11 Cases.**

12.     On January 15, 2018, the Debtors commenced these chapter 11 cases.

13.     On February 8, 2018, the Debtors filed the *Motion for the Entry of an Order Authorizing Rejection of Certain Executory Contracts Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 111], seeking to reject certain of Chesapeake's contracts.  On March 7, 2018, the Bankruptcy Court entered an order [Docket No. 446] authorizing the rejection of that certain transaction confirmation by and between EOC and CEML dated as of July 12, 2013 ("TC6").

14.     Chesapeake timely filed several proofs of claim (collectively, the "Chesapeake Claims"), on the claims register of the chapter 11 cases against certain of the Debtors, including:

- that certain proof of claim designated as Claim No. 811 filed against Debtor EXCO in the aggregate amount of at least $2,035,604.32;
- that certain proof of claim designated as Claim No. 813 filed against Debtor EXCO in the aggregate amount of at least $2,387.86;
- that certain proof of claim designated as Claim No. 839 filed against Debtor EXCO Land Company, LLC in the aggregate amount of at least $2,035,604.32;
- that certain proof of claim designated as Claim No. 851 filed against Debtor EXCO Midcontinent MLP, LLC in the aggregate amount of at least $162.92;
- that certain proof of claim designated as Claim No. 852 filed against Debtor EXCO Land Company, LLC in the aggregate amount of at least $0.00;
- that certain proof of claim designated as Claim No. 861 filed against Debtor EOC in the aggregate amount of at least $0.00;
- that certain proof of claim designated as Claim No. 864 filed against Debtor EOC in the aggregate amount of at least $2,035,604.32;
- that certain proof of claim designated as Claim No. 866 filed against Debtor EOC in the aggregate amount of at least $1,680,737.06;
- that certain proof of claim designated as Claim No. 870 filed against Debtor EOC in the aggregate amount of at least $0.00;
- that certain proof of claim designated as Claim No. 873 filed against Debtor EOC in the aggregate amount of at least $2,035,604.32;
- that certain proof of claim designated as Claim No. 877 filed against Debtor EXCO in the aggregate amount of at least $0.00;
- that certain proof of claim designated as Claim No. 900 filed against Debtor Raider in the aggregate amount of at least $2,035,604.32;
- that certain proof of claim designated as Claim No. 904 filed against Debtor Debtor EXCO Resources (XA), LLC in the aggregate amount of at least $5,809.96;
- that certain proof of claim designated as Claim No. 906 filed against Debtor Raider in the aggregate amount of at least of $0.00; and
- that certain proof of claim designated as Claim No. 907 filed against Debtor Raider in the aggregate amount of at least of $0.00.

15.     On October 1, 2018 EXCO filed the *Settlement Joint Chapter 11 Plan of Reorganization of EXCO Resources, Inc. and Its Debtor Affiliates* [Docket No. 1102] (as may be amended, modified, or supplemented from time to time, the "Plan").

16.     On October 30, 2018, Chesapeake filed the *Objection of Chesapeake Energy Marketing, L.L.C. to Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures With Respect to Confirmation of the Proposed Settlement Joint Chapter 11 Plan of Reorganization of EXCO Resources, Inc. and Its Debtor Affiliates, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief and the Amended Disclosure Statement for the Settlement Joint Chapter 11 Plan of Reorganization of EXCO Resources, Inc. and its Debtor Affiliates to the Debtors' Disclosure Statement* [Docket No. 1183].

17.     On November 9, 2018, the Debtors filed *Debtors' Motion to Estimate Proof of Claim of Chesapeake Energy Marketing, L.L.C.* (the "Estimation Motion") seeking to estimate portions of the Chesapeake Claims against Debtor EOC related to the NAESB and TC6 at $0.00. On November 16, 2018, the Debtors withdrew the Estimation Motion.

18.     On November 26, 2018, the Debtors filed the Plan Supplement (as defined in the Plan), which included the *Schedule of Assumed Executory Contracts and Unexpired Leases* and *Schedule of Rejected Executory Contracts and Unexpired Leases*.  Included as executory contracts to be assumed were: (a) the NAESB and Active Eagle Ford TCs, with a corresponding cure amount of $2,035,604.32, (b) the Crude Oil Purchase Contract with a cure amount of $0.00, (c) the Mahoney Operating Agreement, with a cure amount of $725,455, (d) the Louisiana Operating Agreement, with a cure amount of $0.00, and (e) the Farmout Agreement, with a cure amount of

$0.00 (together, the "Assumed Chesapeake Contracts").  Included as executory contracts to be rejected were: (a) the KM Ranch Settlement Agreement and (b) the Eagle Ford PSA (together, the "Rejected Chesapeake Contracts").

19.     On December 4, 2018, the Debtors and Chesapeake, together with the Committee, attended a mediation, led by Chief Judge David R. Jones, to resolve the outstanding disputes between the Parties.

## IV.     The Chesapeake Settlement Agreement.

20.     The Debtors have reviewed and analyzed the Prepetition Litigation and the Chesapeake Claims, and their likelihood of success with regard thereto.  In their sound business judgment, the Debtors concluded that a settlement of the outstanding issues between the Debtors and Chesapeake was in the best interests of their estates and would avoid the unnecessary expense and distraction of litigation with Chesapeake at this critical juncture in their chapter 11 cases.

21.     In light of the foregoing, the Debtors negotiated the terms of a consensual settlement with Chesapeake.  Under the terms of the Chesapeake Settlement Agreement:[3]

a)     the NAESB and Active Eagle Ford TCs shall be deemed assumed by Raider pursuant to 11 U.S.C. § 365, with an effective date of such assumption as of November 15, 2018; *provided*, that such assumption shall expressly be made subject to section 14.1 of the NAESB;

b)     the Crude Oil Purchase Contract, the Mahoney Operating Agreement, the Louisiana Operating Agreement, and the Farmout Agreement (collectively, together with the NAESB and the Active Eagle Ford TCs, the "Assumed Chesapeake Contracts") shall deemed assumed by EOC pursuant to 11 U.S.C. § 365, with an effective date of such assumption as of November 15, 2018;

c)     upon entry of the Order, the requirements of 11 U.S.C. § 365(b)(1)(A)-(C) and (f)(2)(A)-(B) shall be deemed to be satisfied with respect to the Assumed Chesapeake Contracts as of November 15, 2018, and no cure

---

[3]     The following summary is provided for illustrative purposes only and is qualified in its entirety by reference to the Chesapeake Settlement Agreement.  In the event of any inconsistency between this summary and the Chesapeake Settlement Agreement, the Chesapeake Settlement Agreement or the Order authorizing the Settlement, as applicable, controls in all respects.

payment or adequate assurance of future performance pursuant to 11 U.S.C. § 365 shall be necessary;[4]

d)     the Parties shall work in good faith to determine whether any amounts are owed under the Assumed Chesapeake Contracts for the period after November 15, 2018, and the Debtors agree to pay any such amounts in the ordinary course of business following entry of the Order;

e)     the Eagle Ford PSA and the KM Ranch Settlement shall be deemed rejected (together, the "Rejected Chesapeake Contracts") and Chesapeake shall not contest such rejection, *provided*, that the Debtors and Chesapeake shall enter into a new agreement that provides for the Debtors' ongoing plugging and abandonment obligations consistent with the Debtors' plugging and abandonment obligations set forth in the Eagle Ford PSA;

f)     upon entry of the Order, all Chesapeake Claims shall be deemed disallowed and expunged, and Chesapeake shall not assert any rejection damages relating to the rejection of TC6 or the Rejected Chesapeake Contracts; *provided*, that Chesapeake reserves all rights based on events, dealings, actions, damages, claims, or injuries occurring or arising after November 15, 2018, if any, relating to the Assumed Chesapeake Contracts;

g)     upon entry of the Order, all claims and causes of action of the Debtors (and any successors-in-interest) against Chesapeake and all claims and causes of action of Chesapeake against the Debtors that have been, or could be, asserted in the Prepetition Litigation, including debts, defenses, liabilities, costs, attorneys' fees, actions, suits at law or equity, demands, contracts, expenses, damages, whether general, specific or punitive, exemplary, contractual or extra-contractual, will be deemed released, and the Debtors shall promptly take all actions necessary to dismiss or withdraw the Texas Litigation and Louisiana Litigation with prejudice within seven (7) days of entry of the Order; and

h)     upon execution of the Chesapeake Settlement Agreement, Chesapeake will not oppose the Debtors' Plan and shall not conduct any discovery efforts related thereto, and further agrees to the release, exculpation, and injunction provisions included in the Plan and shall not opt out of any third party release provided therein; *provided further* that (i) if the Order is not entered prior to notice of a confirmation hearing scheduled on the Plan or commencement of solicitation of a revised plan, but only until the Order is entered, and/or (ii) the Debtors breach their obligations under the Chesapeake Settlement Agreement, Chesapeake (x) reserves all rights to contest and/or object to the Plan and/or conduct discovery relating thereto;

---

[4]   The Debtors and the Committee have discussed the possibility of contributing certain waived cure amounts to fund distributions to unsecured creditors pursuant to the Plan. Any such contribution, if any, will be documented in the Plan.

and (y) shall be entitled to opt out of any third party release contained therein.

22.    The Debtors believe the Chesapeake Settlement is in the best interests of the Debtors and their estates.  The Chesapeake Settlement resolves significant disputes between the Parties, the outcome of which are inherently uncertain, including the Debtors' potential liability under the Active Chesapeake Contracts (and any cure claims or rejection damages associated with assumption or rejection thereof), the Chesapeake Claims, and Chesapeake's potential liability on account of the Prepetition Litigation, with no cash outlay by the Debtors.  Accordingly, to finally resolve the Debtors' disputes with Chesapeake, the Debtors seek authorization to enter into the Chesapeake Settlement Agreement and to implement its terms.  Upon entry of the Order, the Debtors and Chesapeake will carry out the terms of the Chesapeake Settlement Agreement.

## Basis for Relief

### I.    Settlements Are Favored in Bankruptcy, and Debtors' Business Judgment Is Given Significant Deference.

23.    Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee.... and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

24.    "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy."  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal quotations omitted).  Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly."  *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).

25.     Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate.  *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).  Ultimately, approval of a compromise is within the "sound discretion" of the bankruptcy court.  *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *see also Jackson Brewing Co.*, 624 F.2d at 602–03 (same).

26.     Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement.  *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993).  Instead, the court should determine whether the settlement as a whole is fair and equitable.  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).[5]

27.     "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005).  "As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code."  *Richmond Leasing Co.*, 762 F.2d 1303, 1309 (5th Cir. 1985).

## II.     The Settlement Satisfies the Three-Factor Test Courts in the Fifth Circuit Employ to Analyze Proposed Settlements.

28.     The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements.  The factors a court must consider in determining whether a compromise is "fair, equitable, and within the best interest of the estate are:

---

[5]     Further, under section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  Authorizing the Debtors to proceed with the Settlement falls squarely within the spirit of Bankruptcy Rule 9019, if not the letter, as well as the Bankruptcy Code's predilection for compromise.  Thus, to the extent necessary, section 105(a) relief is appropriate in this instance and would best harmonize the settlement processes contemplated by the Bankruptcy Code.

'(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise.'" *In re Roqumore*, 393 B.R. 474, 479 (Bankr. S.D. Tex. 2008) (citing the factors set forth by the court in *Jackson Brewing*); s*ee also Age Ref. Inc.*, 801 F.3d at 540 (same).

29.     Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement.  ***First***, the court should consider "the paramount interest of creditors with proper deference to their reasonable views."  *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995); *see also Age Ref. Inc.*, 801 F.3d at 540 (noting the *Foster Mortgage* factors).  "While the desires of the creditors are not binding, a court 'should carefully consider the wishes of the majority of the creditors.'"  *Foster Mortgage*, 68 F.3d at 917 (quoting *In re Transcontinental Energy Corp.*, 764 F.2d 1296, 1299 (9th Cir. 1985)).  ***Second***, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion."  *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

### A.     The Debtors Are Not Certain to Succeed in Litigating the Issues Between the Debtors and Chesapeake.

30.     With respect to "the probability of success in litigating the claim subject to settlement," the Debtors, in consultation with their advisors, do not believe it is certain that they would succeed in litigation related to the Prepetition Litigation and the Chesapeake Claims.  The Debtors have asserted various claims against Chesapeake in the Prepetition Litigation, and Chesapeake has asserted various counterclaims and defenses, including certain rights of setoff or recoupment, against certain of the Debtors.  Litigation of these matters would require fact-specific

11

analyses of breach and damages.  Further, with respect to the Chesapeake Claims, which are numerous, Chesapeake has asserted various contingent and unliquidated amounts due under the Active Chesapeake Contracts, and could assert rejection damages claims related to certain of the Rejected Chesapeake Contracts, which similarly likely would require fact-specific determination of damages.  Ultimately, resolution of the disputes between the Parties would rest in a court's discretion to weigh the relevant facts and circumstances.  Due to the inherently uncertain nature of the disputes between the Parties, it is not possible to guarantee a successful outcome thereof, each of which would likely require a time-consuming and extensive trial.

### B. Continued Litigation with Chesapeake Would Be Complex and Result in Delay and Distraction.

31.    With respect to "the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay," continued litigation with Chesapeake on the pending matters, as well as any potential objections by Chesapeake to confirmation of the Plan in connection with the Chesapeake Claims and the Active Chesapeake Contracts, likely would be costly and time-consuming.  The Debtors and Chesapeake have been engaged in costly and distracting pre-trial preparations,[6] including the recent production by the Debtors of four expert reports, hundreds of thousands of pages of discovery, and substantial written discovery.  Were litigation to continue, the Debtors would expect to take and defend multiple depositions, including of the Debtors' senior management, prepare and file dispositive motions, and prepare for a full trial.  The Debtors estimate that their fees and expenses could be in excess of $175,000.00 per month.  Further, the Debtors believe that absent a settlement, Chesapeake likely would continue to object strenuously to the Debtors' restructuring efforts, causing additional delay and distraction during

---

[6]    Pursuant to the *Stipulation and Agreed Order Regarding Chesapeake Energy Marketing, L.L.C. and Chesapeake Energy Corporations Motion for Relief from the Automatic Stay* [Docket No. 906], the automatic stay was lifted with respect to the Prepetition Litigation.

this challenging period.  Overall, continued litigation between the Parties would require substantial focus from the Debtors' management team, distracting them from day-to-day operations and from successful moving these cases to a resolution.

> **C.      The Chesapeake Settlement Is in the Best Interests of Creditors.**

32.     The Chesapeake Settlement will provide all stakeholders with certainty regarding the resolution of the disputes between the Debtors and Chesapeake, including with regard to the Chesapeake Claims, the Prepetition Litigation, and assumption and rejection of the Active Chesapeake Contracts.  Chesapeake also has agreed not to contest the Debtors' Plan.  And, the Chesapeake Settlement allows the Debtors to assume their favorable contracts with Chesapeake without any associated cure claim.  Similarly, the Chesapeake Settlement allows the Debtors to reject their burdensome contracts with Chesapeake with no attendant rejection damages claim.

33.      Finally, the Chesapeake Settlement arises out of arm's-length bargaining between the Debtors and Chesapeake, including through mediation with Judge Jones.

34.     Based on the foregoing considerations, the Debtors respectfully submit that the Chesapeake Settlement represents a fair and reasonable compromise that is in the best interest of the Debtors' estates.  Accordingly, the Debtors respectfully request that the Court authorize the Debtors to enter into and implement the terms of the Chesapeake Settlement as such action is a reasonable exercise of the Debtors' business judgment and in the best interest of their bankruptcy estates.

## <u>Waiver of Bankruptcy Rule 6004(a) and 6004(h)</u>

35.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**<u>Notice</u>**

36.     The Debtors will provide notice of this motion to:  (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the lenders under the Debtors' debtor-in-possession financing facility and counsel thereto; (c) the indenture trustee for the Debtors' 1.5 lien senior secured notes and counsel thereto; (d) the administrative agent and collateral trustee under the Debtors' 1.75 lien term loan facility and counsel thereto; (e) administrative agent under the Debtors' second lien term loan facility and counsel thereto; (f) the indenture trustee for the Debtors' 2018 senior notes; (g) the indenture trustee for the Debtors' 2022 senior notes; (h) counsels to certain 1.5 lien noteholders and 1.75 lien lenders; (i) counsel to the official committee of unsecured creditors; (j) counsel to Cross Sound Management LLC; (k) the United States Attorney's Office for the Southern District of Texas; (l) the Internal Revenue Service; (m) the United States Securities and Exchange Commission; (n) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (o) the state attorneys general for states in which the Debtors conduct business; (p) Chesapeake and its counsel, and (q) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully Submitted,

*/s/ Christopher T. Greco, P.C.*

Dated: February 25, 2019

Christopher T. Greco, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:              christopher.greco@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:              patrick.nash@kirkland.com
                        alexandra.schwarzman@kirkland.com

- and -

Marcus A. Helt (TX: 24052187)
Telephone:      (214) 999-4526
Facsimile:      (214) 999-3526
Email:              mhelt@foley.com
Michael K. Riordan (TX: 24070502)
Telephone:      (713) 276-5178
Facsimile:      (713) 276-6178
Email:              mriordan@foley.com
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
1000 Louisiana Street, Suite 2000
Houston, Texas 77002

*Counsel for the Debtors and Debtors in Possession*

15

**<u>Certificate of Service</u>**

I certify that on February 25, 2019, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Christopher T. Greco, P.C.*
Christopher T. Greco, P.C.
